■ In the Matter of County of Erie et al., Petitioners, v New York State Public Employment Relations Board et al., Respondents. [668 NYS2d 740] —Crew III, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which separated certain Deputy Sheriffs from a larger collective bargaining unit.

At all times relevant to this proceeding, respondent Teamsters Local 264 (hereinafter Local 264) represented a comprehensive bargaining unit consisting of various individuals employed by petitioners. In May 1994, respondent Erie County Sheriff's Police Benevolent Association (hereinafter the PBA) filed a petition with respondent Public Employment Relations Board (hereinafter PERB) seeking permission to "carve out" a new bargaining unit for those individuals employed by petitioners in the "Deputy Sheriff-criminal" job title series.* Essentially, the PBA took the position that the individuals employed in that title series primarily were engaged in law enforcement and crime prevention, whereas those employed in

---

* The following job titles were proposed for inclusion in the requested bargaining unit: Deputy Sheriff-criminal, Deputy Sheriff-criminal (Spanish speaking), Deputy Sheriff-criminal (Seneca speaking), undercover narcotics Deputy, Detective Deputy, Detective Deputy arson, Technical Sergeant, Sergeant-criminal, training director, Senior Detective narcotics, coordinator-domestic violence, Lieutenant-criminal and Captain-criminal.

the "Deputy Sheriff-officer" series primarily provided routine security and guard work at the County's holding center and various courts. Given the distinctions between the respective series, the PBA asserted, a new bargaining unit was warranted.

Petitioners and Local 264, the latter of which was permitted to intervene, opposed the decertification petition. Following a lengthy hearing, PERB's Director of Public Employment Practices and Representation dismissed the petition finding, *inter alia*, that a separate and distinct law enforcement community of interest, as contemplated by PERB in *Matter of Dutchess County Deputy Sheriffs Police Benevolent Assn.* (26 PERB ¶ 3069), had not been established. The PBA filed exceptions and, ultimately, PERB reversed the Director's decision and remanded the matter for further proceedings, during the course of which it was determined that those employees assigned to the "Rath Patrol" should be included in the fragmented unit. Following the PBA's certification as the exclusive negotiating representative for the new bargaining unit, petitioners commenced this proceeding pursuant to CPLR article 78, subsequently transferred to this Court, seeking to annul PERB's determination.

In reviewing petitioners' challenge to PERB's determination, we are mindful that "the function of [this] court is not to determine *de novo* the best or most likely or most advantageous bargaining unit, but is restricted to a finding of whether PERB's decision is supported by substantial evidence * * * or is arbitrary and capricious" (*Matter of Bivens v Helsby*, 55 AD2d 230, 232 [emphasis in original] [citations omitted]). To that end, we reject petitioners' contention that the "fragmentation test" adopted by PERB here constituted an unwarranted and unexplained departure from PERB's prior decision in *Matter of Dutchess County Deputy Sheriffs Police Benevolent Assn.* (26 PERB ¶ 3069, *supra*) and, hence, was arbitrary and capricious.

Prior to *Dutchess*, PERB indeed had held that "deputy sheriffs are not appropriately fragmented from existing units which include other sheriff's department employees" (*id.*, at 3128; *see, e.g., Matter of County Assn. of Patrol Officers*, 25 PERB ¶ 3062; *Matter of County of Albany*, 19 PERB ¶ 3054). In *Dutchess*, however, PERB had occasion to reconsider its prior fragmentation decisions and, in so doing, suggested that "the 'law enforcement' responsibilities and duties of deputy sheriffs and other sheriff's department employees may be sufficient to warrant the establishment of a separate unit of deputy sheriffs"

(*Matter of Dutchess County Deputy Sheriffs Police Benevolent Assn., supra*, at 3130). As the focus in *Dutchess* centered on whether the Deputy Sheriffs at issue had been inadequately represented, PERB remanded the matter for further proceedings, including consideration of the "civil service classifications, distinct duties, responsibilities and working conditions of the deputy sheriffs and other employees of the [j]oint [e]mployer" (*id.*).

In our view, the distinction drawn by PERB between the Deputy Sheriff-criminal and Deputy Sheriff-officer series in this matter is nothing more than a logical extension of its prior decision in *Dutchess*, wherein PERB acknowledged that the distinctive duties of the Deputy Sheriffs and other Sheriff's department personnel might warrant the establishment of a separate bargaining unit. Moreover, to the extent that the analysis undertaken by PERB here may be viewed as inconsistent with its prior decision in *Dutchess*, the record establishes that PERB has articulated a sufficient basis for any perceived departure from prior precedent and, hence, petitioners' contention that the underlying determination is arbitrary and capricious is lacking in merit.

Equally unpersuasive is petitioners' assertion that the underlying determination is not supported by substantial evidence. Even a cursory review of the respective job descriptions for Deputy Sheriff-criminal and Deputy Sheriff-officer, which were admitted into evidence at the hearing, reveal substantial differences with respect to, *inter alia*, the distinguishing features of the class, training, typical work activities and the knowledge, skills and minimum qualifications required. For example, it is apparent from a description of the Deputy Sheriff-criminal position that individuals so employed engage in "general law enforcement and crime prevention work", whereas those employed in the position of Deputy Sheriff-officer provide "routine security and guard work" at the County's holding centers and various courts. Similarly, although those employed in the position of Deputy Sheriff-criminal must complete a minimum of 60 credit hours at an accredited college or university, a candidate for the position of Deputy Sheriff-officer need only possess a high school or equivalency diploma. Additionally, the testimony adduced at the hearing reveals that the training program for the Deputy Sheriff-criminal position is far more extensive than its Deputy Sheriff-officer counterpart, and the two programs, although overlapping to a limited extent, nonetheless have a substantially different focus in terms of overall subject matter.

Finally, although Deputy Sheriffs in both title series interact with and transport inmates, a review of the typical work activi-

ties associated with each demonstrates that while caring for and guarding inmates is the primary function of those employed in the Deputy Sheriff-officer series, it is but a small part of the overall duties of those employed in the Deputy Sheriff-criminal series. In short, the documentary and testimonial evidence adduced at the hearing with respect to the differences in the Deputy Sheriff-criminal and Deputy Sheriff-officer title series fully supports PERB's determination that only those employed in the Deputy Sheriff-criminal series "have criminal law enforcement as the exclusive or primary attribute of his or her employment". Petitioners' remaining contentions have been examined and found to be lacking in merit.

Mikoll, J. P., Mercure, Yesawich Jr. and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

